IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| ALFONSO ALVAREZ-PORTILLO, | ) | |
| VICKIE ALVAREZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-4044-CV-C-WAK |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the court are motions by plaintiffs for summary judgment and by defendant to dismiss, for judgment on the pleadings or for summary judgment. The issues have been fully briefed and are now ready for ruling.

In March 2004, plaintiffs filed this case under the Federal Tort Claims Act, alleging defendant wrongfully deported plaintiff Alfonso Alvarez-Portillo (Alvarez-Portillo). In their complaint, plaintiffs claim defendant's agents were negligent, failed to exercise due care and failed to provide sufficient procedural safeguards to protect plaintiffs' due process rights. Additionally, plaintiffs claim Alvarez-Portillo was falsely imprisoned and maliciously prosecuted.[1] For relief, they seek monetary damages.

The basic facts are not in dispute. Plaintiff Alvarez-Portillo, a citizen of Mexico, entered the United States without authorization some time prior to 1991. He was apprehended and allowed to depart voluntarily. In November 1993, he illegally re-entered the United States and, after being afforded a full hearing, was deported in December 1993. Twelve days later, he again entered the United States without inspection by immigration

---

[1] Plaintiffs withdrew their malicious prosecution claims in their July 22, 2005, response to defendant's pending motions. (Doc. 30 at 9.)

officers.[2] He then lived and worked in the United States for a number of years under an assumed name.

In November 1996, Alvarez-Portillo married Vickie Alvarez (Alvarez), a citizen of the United States. On February 12, 2001, plaintiffs traveled to the INS District Office in Kansas City, Missouri, to petition for Alvarez-Portillo's immigration and an adjustment of status to permanent residence. When plaintiffs went to the window to tender their applications, the official discovered a prior INS history, asked the plaintiffs to wait, and referred the matter to an investigative officer. The agent ran a fingerprint check, retrieved Alfonso Alvarez-Portillo's file and discovered he had previously been deported and had re-entered without inspection. Alvarez-Portillo was questioned and given a notice of the government's intent to reinstate the 1993 order of removal. The Assistant Director for Deportations in the Kansas City, Missouri, office reviewed the available material, decided that Alvarez-Portillo was subject to reinstatement of the prior removal order, and issued an arrest warrant. Alvarez-Portillo was arrested and taken into custody.[3] Plaintiffs were not permitted to file the petitions and applications they had tendered upon entering the district office.

Following the arrest and detention of Alvarez-Portillo on February 12, 2001, plaintiff Alvarez spoke with an attorney. They instituted proceedings in an initial effort to stop the deportation and then to permit Alvarez-Portillo's return to the United States with an adjustment of status.

On February 13, 2001, a Warrant of Removal/Deportation was issued. On February 26, 2001, Alvarez-Portillo's application for permission to reapply for admission into the United States after deportation or removal was submitted to and accepted by the INS. It was approved on March 20, 2001, seven days after he was deported to Mexico.

On February 20, 2001, Alvarez-Portillo filed a petition seeking review by the United States Court of Appeals for the Eighth Circuit of the order of deportation. A temporary stay

---

[2] An entry "without inspection" is an entry that involves evasion of inspection by immigration officers. See 8 U.S.C. § 1225(a)(3).

[3] He remained in detention/custody until deported.

of deportation was entered on February 21, 2001, and dissolved on March 5, 2001. Alvarez-Portillo was deported to Mexico on March 13, 2001.

On February 13, 2002, the Eighth Circuit issued a decision upholding the use of the summary procedure of section 241(a)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(5) (1996), but finding that section 241(a)(5) could not be applied retroactively to preclude an application by Alvarez-Portillo to the Attorney General for a discretionary status adjustment. Accordingly, the Eighth Circuit remanded the matter to the INS. In a separate decision, issued on April 10, 2002, the Eighth Circuit denied Alvarez-Portillo's request for an order directing INS to return him to the United States and to award attorney fees.

Alvarez-Portillo remained in Mexico until May 7, 2002, when he was permitted to reenter the United States. In July 2002, he was issued an employment authorization and in September 2003, was granted permanent residency status.

In this case, plaintiffs allege they were damaged by the negligence of the INS agents who applied section 241(a)(5) procedures and deportation, rather than permitting a section 245(i)[4] application for adjustment of Alvarez-Portillo's status to that of an alien lawfully admitted for permanent residence. Alternatively, plaintiffs claim that defendant's agents falsely imprisoned Alvarez-Portillo. As a result of these actions by agents and employees of defendant, plaintiffs assert they lost their employment, home, liberty, enjoyment of life, and consortium; suffered severe mental distress; and incurred attorney fees and expenses.

On June 15, 2005, defendant filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). When jurisdiction is challenged, the plaintiff has the burden of proving its existence. Green Acres Enterprises, Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005). If the court finds that subject matter jurisdiction is missing, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). In making that determination, however, the court may look outside of the pleadings. Green Acres Enterprises, Inc. v. United States, 418 F.3d at 856.

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005).

---

[4] 8 U.S.C. § 1255(i) (1994) (hereinafter referred to as § 245(i)).

Waivers of immunity are strictly construed in favor of the sovereign, and thus, it is the "plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." Welch v. United States, 409 F.3d at 651.

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), authorizes suits against the United States in certain circumstances for damages caused by the negligent or wrongful acts or omissions of a government employee acting within the scope of his office or employment, if a private person would be liable to the claimant in accord with law of the place where the act or omission occurred. "The Act did not waive sovereign immunity . . . in all respects, however; Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." United States v. Varig Airlines, 467 U.S. 797, 808 (1984).

The relevant exceptions, found in 28 U.S.C. § 2680(a), state that the Act shall not apply when a government employee exercises due care in the execution of a statute or regulation, or when the claim is based upon the exercise of a discretionary function by the employee, whether or not that discretion is abused.

In their complaint, plaintiffs allege that the government employees of INS were negligent "in failing to exercise due care in processing Plaintiff and in failing to provide sufficient procedural safeguards to protect Plaintiff's due process rights under the circumstances of this case." (Doc. 1 at 3.) They also assert that Alvarez-Portillo was falsely imprisoned after agents knowingly prevented him from filing authorized immigration applications and did not apply statutes and regulations that would let him file his papers seeking a change in status without first being incarcerated or deported. Plaintiffs assert that "[w]ith full knowledge of these regulations, and not as a matter of discretion, Defendant's officials and agents were constrained by punitive directions from higher authority to apply the harsh provisions of section 241(a)(5) of the INA to incarcerate him and to remove him to Mexico by 'reinstating' his 1993 deportation, despite his pleas to be processed under the proper provisions or to be released on bond . . . ." (Doc. 1 at 4.)

Based on these initial assertions, defendant seeks dismissal for lack of subject matter jurisdiction because the due care exception of 28 U.S.C. § 2680(a) forecloses a waiver of

4

sovereign immunity. Defendant asserts its employees acted with due care in processing Alvarez-Portillo.

If a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow, the employee has no rightful option but to follow that directive. Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988); United States v. Gaubert, 499 U.S. 315, 322 (1991). On page 4 of their complaint, plaintiffs acknowledge that defendant's agents and officials were acting pursuant to regulations and policy when they applied section 241(a)(5) to Alvarez-Portillo. Plaintiffs do not assert that the employees acted contrary to the policy. Absent an allegation that the employees deviated from the requirements of the policy, regulation or statute, it cannot be said that they acted with anything other than due care. Welch v. United States, 409 F.3d at 652.

In their response to the motion to dismiss, plaintiffs' position changes with regard to when the negligence occurred. Plaintiffs appear to concede that government agents or employees exercised due care in the *execution* of the statutes, regulations and policies that they did use. Instead, plaintiffs now assert that the negligence occurred in the selection and implementation of the statutes to be applied, i.e., prior to the *execution*. (Doc. 30 at 2.)

Plaintiffs argue, without any supporting citations, that the due care exception does not apply when there are competing regulations. Likewise, they boldly assert that when there are competing regulations with differing results, it is negligent to apply the wrong one and that the choice of which regulation to apply is not a discretionary function. (Doc. 30 at 3.)

They now state that the negligence occurred when the enforcement agent negligently assumed that only the reinstatement regulation applied to Alvarez-Portillo.

Plaintiffs ask why the employees and agents weren't required to apply a different, valid regulation which would have made Alvarez-Portillo's presence lawful, and thus, made the deportation statutes, regulations and policies inapplicable to him. The issue, then, is whether defendant's agents and employees were acting with discretion in determining which statutes to apply or whether they were following a prescribed course of action. If they were simply following a prescribed course of action, and exercised due care in doing so, the government is entitled to dismissal for lack of subject matter jurisdiction.

5

Under established precedents, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." United States v. Gaubert, 499 U.S. at 324. The submitted documents indicate that defendant's agents and employees were complying with the statutes and regulations, and following agency policy for this district. There is no indication that they had discretion to do otherwise, and plaintiffs do not seriously assert otherwise.

In a memorandum issued on July 31, 1997, by the Office of Field Operations, certain directors and agents were notified of INS policy with respect to section 241(a)(5). (Doc. 25-3 at page 4.) It specifically states under the statute, reinstatement of final orders pursuant to section 241(a)(5) is mandatory and is not optional. The affidavit of Thomas McCarthy, Associate Principal Legal Advisor, (Doc. 25-3 at page 2) states that it "was the policy of the INS at that time and remained the policy of the INS throughout [his] employment there that the reinstatement mandate applied irrespective of whether the original order or the alien's illegal reentry into the United States occurred before or after § 241(a)(5) was enacted, or its effective date, except within United States judicial circuits in which courts had issued decisions inconsistent with this policy." He further states that it was INS policy to apply section 241(a)(5) irrespective of whether discretionary relief[5] would otherwise be available to the alien under section 245(i), except where Congress had made a specific statutory exception to section 241(a)(5).

McCarthy also states that in February 2001, the only judicial district at odds with the policy was the Ninth Circuit, as reflected in a decision entered on January 23, 2001. The submitted records indicate plaintiffs were not in or residents of the Ninth Circuit at the time they went to the office in Kansas City, Missouri.

Thus, the documents before the court indicate government employees followed established INS policy under the circumstances of this case and there is no evidence that

---

[5]The language of § 245(i) is discretionary in that it says an alien "may apply to the Attorney General for the adjustment of his or her status," the Attorney General "may accept such application only if the alien remits," and the Attorney General "may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if . . . ."

6

they failed to exercise due care in doing so.  Although plaintiffs assert the employees were negligent in choosing which regulation or statute to apply, the documents setting forth the policies clearly show the employees were following a mandatory policy and did not have discretion to do otherwise.

Plaintiffs attempt to classify this case as one of negligence, but the main thrust of their assertions and responses indicate they are challenging the policies being utilized at the time of Alvarez-Portillo's arrest and deportation.  The formulation of the policies at issue fall within the discretionary exception to tort liability found in 28 U.S.C. § 2680(a).  Congress' purpose in enacting the discretionary exception was to prevent judicial intervention in the political, social and economic judgments of governmental agencies.  Berkovitz by Berkovitz v. United States, 486 U.S. at 539.  It marks the boundary between Congress' willingness to impose tort liability and its desire to protect certain governmental activities from exposure to suit from private individuals.  Berkovitz by Berkovitz v. United States, 486 U.S. at 536 (quoting United States v. Varig Airlines, 467 U.S. 797, 808 (1984)).  While plaintiffs had or may have other avenues to challenge the statutes and policies applied to them, they may not do so through a claim for damages brought under the Federal Tort Claims Act.

Accordingly, dismissal for lack of subject matter jurisdiction is appropriate.

The court notes that defendant also seeks dismissal based on the bar of 8 U.S.C. § 1252, the private person requirement of 28 U.S.C. §§ 1346(b) and 2674, and for failure to state a false imprisonment claim under Missouri law.  After considering the parties' pleadings in support of and opposition to dismissal, and a review of the relevant case law, the court finds that many of defendant's grounds and arguments are persuasive.  In light of the foregoing dismissal for lack of subject matter jurisdiction based upon the due care and discretionary exceptions to liability under the Federal Tort Claims Act, however, a discussion of the other grounds is not currently required.

For these reasons and those set out more fully in defendant's pleadings, it is

ORDERED that defendant's motion of June 15, 2005, to dismiss for lack of subject matter jurisdiction is granted and this case is dismissed.  [25]  It is further

7

ORDERED that plaintiffs' motion of June 10, 2005, for summary judgment is denied as moot. [22]

Dated this 31st day of October, 2005, at Jefferson City, Missouri.

/s/

WILLIAM A. KNOX
United States Magistrate Judge